UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LARRY ROBERT HALE,

                    Petitioner,

                                                  CASE NO. 2:14-CV-14600
v.                                                HONORABLE GERALD E. ROSEN

STEVEN RIVARD,

                    Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

**I.     Introduction**

        Michigan prisoner Larry Robert Hale ("Petitioner"), through counsel, has filed a petition for a writ of habeas corpus asserting that he is being held in violation of his constitutional rights. Petitioner pleaded no contest to third-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d(1)(b), in the Berrien County Circuit Court and was sentenced to 10 to 15 years imprisonment in 2012.  In his pleadings, he asserts that his plea was not knowing, intelligent, and voluntary due to his low mental ability and that the trial court should have held a competency hearing.  For the reasons stated, the Court denies the petition for a writ of habeas corpus.  The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

**II.     Facts and Procedural History**

        Petitioner's conviction arises from his sexual conduct with a nine-year-old girl, who was a family friend, at his home in Berrien County, Michigan between 2009 and 2011.  At the preliminary examination, which provided the factual basis for the plea, the victim testified that Petitioner used his privates, fingers, and tongue to touch and/or penetrate her privates and mouth.  *See* 3/6/12

Prelim. Exam. Hrg. Tr., pp. 27-31.  The victim's six-year-old sister testified that Petitioner did "bad touches" to her, but could not remember the details.  *Id.* at p. 20.  The girls' uncle testified that the girls disclosed Petitioner's conduct to him one day while they were driving in the car.  *Id.* at pp. 9-10.  Petitioner was charged with multiple counts of criminal sexual conduct concerning the nine-year-old.

On June 11, 2012, Petitioner pleaded no contest to one count of third-degree criminal sexual conduct in exchange for the dismissal of the other charges and a sentence of 10 to 15 years imprisonment.  At the plea hearing, the following colloquy occurred:

> THE COURT: Alright, I understand that we have a plea agreement in this case, Mr. Parish?
>
> MR. PARISH: We do, your Honor. The agreement is that Mr. Hale will plead no contest to a single count of Criminal Sexual Conduct in the 3rd Degree; in return all the other charges will be dismissed . It's also part of the agreement, on both sides, that there be an agreed sentence in this matter of not less than 10, nor more than 15 years. Do you understand all that?
>
> THE DEFENDANT: Yes.
>
> MR. PARISH: And that's what you wanna do?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay.
>
> MR. PARISH: We do have one small problem I want to call to your Honor's attention and that's this. My client does not read and as a result, while I can have him sign the Advice of Rights, I have not had an opportunity until just this moment to go through those with him, so I would suggest that, perhaps, it might be quickest just to read them aloud when we reach that point.
>
> THE COURT: Okay, that's fine. Alright, sir, can you please raise your right hand? Do you solemnly swear or affirm, under the pains and penalties of perjury, that the testimony you're about to give in the matter now pending before the Court will be the truth, the whole truth and nothing but the truth?
>
> THE DEFENDANT: Yes.

THE COURT: Okay. Can you give me the rights form, please, Mr . Parish?

MR. PARISH: Yes. You wanna sign it there. I'm gonna have him sign it, although, as I said, he--

THE COURT: That's fine.

MR. PARISH: I'm gonna to give him a copy so that anybody else can help him read it.

THE COURT: Alright, I need to ask you a few questions, sir. I'm not trying to be insulting. I just need to establish a record. How old are you?

THE DEFENDANT: Fifty-four.

THE COURT: How far have you gone in school?

THE DEFENDANT: Actually, I quit in the 10th grade.

THE COURT: Okay. You just-- Can you speak closer to the microphone, please? You-- You--

THE DEFENDANT: I'm 54 and I quit in the 10th grade.

THE COURT: Okay. And we already covered the fact that you have some difficulty reading, so I'm gonna go through-

THE DEFENDANT: Correct.

THE COURT: --these rights--

THE DEFENDANT: My education's--

THE COURT: --with you one--

THE DEFENDANT: --bad.

THE COURT: --at a time. Are you currently under the influence of any controlled substance, prescription medication or alcohol that would make it difficult for you to understand me or speak with your attorney Mr. Parish?

THE DEFENDANT: Nope. I just take medication for my heart.

THE COURT: Okay. But that doesn't affect your comprehension of your--

3

THE DEFENDANT: No.

THE COURT: --surrounding or what's happening?

THE DEFENDANT: No.

THE COURT: Okay. You're currently appearing in Courtroom 193 in Saint Joseph, Michigan with your attorney Mr. Parish standing at your side, the People are, again, represented here this morning by the prosecuting attorney Mr. Sepic. It is alleged that from September 20th of 2009 to on or about August 24th of 2011 in Berrien County, Michigan, you committed the offense of Criminal Sexual Conduct in the 3rd Degree by having sexual contact with McKyndsie Kaeding, a person under 13 years of age--

MR. SEPIC: And that would be by -- Count 1 would be by penetration, judge.

THE COURT: All right. digitally or . . . -- by penetration . . . Was it

MR. SEPIC: Penis/vagina.

THE COURT: All right. -- penetration, penis to vagina, with McKyndsie Kaeding, a person under 13 years of age. This is charged as Criminal Sexual Conduct in the 3rd Degree. It is a felony. The maximum penalty is 15 years in a Michigan state prison, mandatory collection of a DNA sample, fines, costs, probation, as well as, registration under the Michigan Sex Offender Act. You understand the charge against you, sir?

THE DEFENDANT: Correct.

THE COURT: You have to say yes or no.

THE DEFENDANT: Yes.

THE COURT: And how do you wish to plead, guilty, not guilty, no contest?

THE DEFENDANT: No contest.

THE COURT: You understand, sir, that if I accept your no contest plea here this morning, you'll not have a jury trial of any kind and you'll be giving up all the rights you'd have had at that jury trial? You understand that?

THE DEFENDANT: No trial?

THE COURT: Right. And, do you understand that all of the rights that you would have at that jury trial are contained in this Advice of Rights Circuit Court Plea form, which you've signed here this morning, they include: The right to be tried by a jury;

4

to be presumed innocent until proven guilty; to have the Prosecutor, in this case, Mr. Sepic, prove beyond a reasonable doubt that you are guilty; to have the witnesses against you appear at your trial; to question the witnesses against you - Mr. Parish, your attorney, would question them for you; to have the Court ordy--order any witnesses that you want for your defense to appear at trial - in other words, if you believe you have witnesses that can prove you're innocent of this charge, they would be subpoenaed and I would require them to be here and attend; to remain silent during your trial - you don't have to testify; to not have that silence used against you - I would give the jury an instruction that they're not to consider the fact that you didn't testify; and finally, if you choose to, you have the right to testify at your own felony jury trial; do you understand that if I accept your no contest plea all of these rights that I just read to you are gone?

THE DEFENDANT: Yes.

THE COURT: You have to speak louder, please.

THE DEFENDANT: Yes.

THE COURT: And that's what you want me to do, sir?

THE DEFENDANT: Yes.

THE COURT: You further understand that if the Court accepts your no contest plea here this morning you'll be giving up any claim that your plea was because of, or the result of, any promises, tricks or threats that you don't tell me about right now, and, you'll also be waiving any claim that this was not your decision to plead no contest; in other words, you can't come back tomorrow morning and say, I didn't want to do that yesterday morning, Judge LaSata, Mr. Parish told me I had to do it, or, Mr. Sepic came back and threatened me in the holding cell; you understand you're giving up any claim like that?

THE DEFENDANT: You means towards--

THE COURT: Yeah. If I accept-- Did any of that happen? Did anyone threaten you or tell you--

THE DEFENDANT: No.

THE COURT: --to plead--

THE DEFENDANT: No.

THE COURT: --no contest? Okay.

THE DEFENDANT: No.

THE COURT: And you understand that you can't come back and--and tell me that--

THE DEFENDANT: Right.

THE COURT: --tomorrow?

THE DEFENDANT: Okay.

THE COURT: This is the time and place. I have not yet accepted your no contest plea, and you're under oath.

THE DEFENDANT: (No verbal response)

THE COURT: All right. Do you further understand that any appeal of your conviction and sentence pursuant to this no contest plea to the Michigan Court of Appeals, the court above me, must be by application for leave to appeal and not by right?

THE DEFENDANT: Yeah.

THE COURT: Okay. Are you currently on parole or probation, sir?

THE DEFENDANT: Sir?

THE COURT: Are you currently on parole or probation?

THE DEFENDANT: No. This is my first.

THE COURT: Mr. Sepic, can you please place the plea agreement on the record, sir?

MR. SEPIC: Yes, judge. In exchange for a plea of no contest to the amended Count 1 of CSC 3rd, the People will dismiss Counts 2 , 3 , 4 and 7, and further, that at the time of sentence, the parties agree that the minimum sentence will be 10 years.

THE COURT: Mr. Parish?

MR. PARISH: That's all correct, your Honor. I don't have the charges in front of me. I presume those--that the dismissal is of all charges except the amended Count 1. And am I correct on that?

MR. SEPIC: That's correct.

MR. PARISH: Then it is correct, your Honor.

6

THE COURT: Okay. And finally, Mr . Hale, is that your understanding, sir?

THE DEFENDANT: (Inaudible)

THE COURT: Can you speak up, please?

THE DEFENDANT: Yes. Sorry.

THE COURT: Other than that plea agreement just placed on the record and agreed to by all the parties, has anyone used any other promises, tricks or threats to get you to plead no contest?

THE DEFENDANT: No.

THE COURT: Are you pleading no contest of your own free act and will?

THE DEFENDANT: On my own. Yes-

THE COURT: I'm--

THE DEFENDANT: --on my--

THE COURT: Yea--

THE DEFENDANT: --own.

THE COURT: Okay. I didn't understand the last thing you said.

THE DEFENDANT: On my own.

THE COURT: On your own. Okay. And, counsel, obviously, I presided over the preliminary examination conducted on March 6th of 2012. I recall the testimony of the two victims at that court proceeding. May the Court also review the probable cause sheet in order to establish the factual basis for the no contest plea?

MR. PARISH: Yes, your Honor.

MR. SEPIC: Yes, your Honor.

THE COURT: I also have my notes in the file from preliminary examination; the testimony of the two children. Alright, counsel, are you satis--that's a factual basis as established in the court file at the preliminary examination as well as the probable cause sheet?

MR. PARISH: I am, your Honor.

7

MR. SEPIC: Yes, your Honor. And I would just note for the record that actually those facts the Court is referring to would actually give the facts for CSC 1st Degree, but, of course, the Court can accept a plea to a lesser based on the greater offense, and I believe that's--

THE COURT: You agree-

MR. SEPIC: --the case.

THE COURT: You agree with all that, Mr. Parish?

MR. PARISH: Yes.

THE COURT: Okay. Counsel, are either of you aware of any promises, tricks or threats not disclosed on the record here this morning?

MR. SEPIC: No, your Honor.

MR. PARISH: No, your Honor.

THE COURT: And has the Court complied with all of MCR 6.302 (B ) through (D )?

MR. SEPIC: Yes, judge.

MR. PARISH: Yes, your Honor.

THE COURT: Alright, Mr. Hale, I find, sir, that a sufficient factual basis has been established to support your no contest plea. I further find that your plea of no contest has been made knowingly, freely, voluntarily and understandingly, it is offered without duress, compulsion, undue influence, the promise of benefit or leniency, and I do accept your no contest plea....

6/11/12 Plea Hrg. Tr. pp. 3-12.

Petitioner subsequently moved to withdraw his plea asserting that it was not knowing, intelligent, and voluntary due to his low mental ability. On July 12, 2012, the trial court conducted a hearing, reviewed the plea proceedings, recalled Petitioner's problems with reading and writing, and ruled that the plea was proper and that Petitioner's claim that he did not understand his plea was "completely without merit." *See* 7/12/12 Motion Hrg. Tr., pp. 10-14. On July 16, 2012, the trial court sentenced Petitioner to 10 to 15 years imprisonment in accordance with the plea agreement.

Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising several claims, including his involuntary plea claim, which was denied for lack of merit in the grounds presented. *People v. Hale*, No. 315722 (Mich. Ct. App. May 24, 2013) (unpublished). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Hale*, 495 Mich. 900, 839 N.W.2d 455 (2013).

Petitioner, through counsel, filed his federal habeas petition on December 5, 2014 asserting that his plea was not knowing, intelligent, and voluntary due to his low mental ability. Respondent filed an answer to the petition contending that it should be denied for lack of merit. Petitioner filed a reply to that answer asserting that his plea was not knowing, intelligent, and voluntary and that the trial court erred by failing to conduct a competency hearing.

## III.   Standard of Review

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at

a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court,

a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*; *see also White v. Woodall*, _ U.S. _, 134 S. Ct. 1697, 1702 (2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, _ U.S. _, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, _ U.S. _, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer*, 538 U.S. at 71-72. Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's decision. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340

11

F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Lastly, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

In this case, the state trial court ruled that Petitioner's plea was valid and denied his plea withdrawal motion, the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented, and the Michigan Supreme Court denied leave to appeal in a standard order. For the reasons that follow, the Court concludes that the state courts' decisions are neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[1]

## IV.    Analysis

### A.    Involuntary Plea Claim

Petitioner first asserts that he is entitled to habeas relief because his no contest plea was not knowing, intelligent, and voluntary due to his low mental ability. When a criminal defendant is convicted pursuant to a plea, habeas review is limited to whether the plea was made knowingly, intelligently, and voluntarily. *United States v. Broce*, 488 U.S. 563 (1989); *Boykin v. Alabama*, 395 U.S. 238 (1969). A plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id.* at 756. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748. A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made

---

[1]The Court would reach the same result under a *de novo* standard of review.

aware of the direct consequences of the plea. *Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749.

In this case, the state court record reveals that Petitioner's plea was knowing, intelligent, and voluntary. Petitioner was 54 years old at the time of his plea and had a 10th grade education. There is no evidence that he suffered from any physical or psychological problems which would have impaired his ability to understand the criminal proceedings or the nature of his plea. Petitioner was represented by legal counsel and conferred with counsel during the plea process. The trial court advised Petitioner of his trial rights and the fact that he would be giving up those rights by pleading no contest. The parties discussed the charges, the terms of the plea and sentencing agreement, and the consequences of the plea. Petitioner indicated he understood the plea agreement, that he wanted to plead no contest, that he had not been threatened or promised anything other than what was included in the plea agreement, and that he was pleading no contest of his own free will.

Petitioner asserts that his plea was not knowing, intelligent, and voluntary due to his low mental ability. He relies upon reports, prepared post-sentencing, which score his IQ at 62 (mentally deficient range) and which opine that he may not have been able to fully understand his written plea agreement. At the time of his plea, however, Petitioner stated that he understood the terms of the plea and the rights that he would be giving up by entering a plea and confirmed that it was his own decision to plead no contest to the reduced charge of one count of third-degree criminal sexual conduct with a 10-year minimum and 15-year maximum sentence. The mere fact that Petitioner has a low IQ, a limited education, and difficulty reading and writing does not render his plea invalid. *See United States v. Carpenter*, 26 F. App'x 327, 342-45 (6th Cir. 2001) (ruling that the district court did not err in finding that the defendant was competent and that his plea was knowingly made

13

where he had an IQ between 60 and 70); *see also Penry v. Lynaugh*, 492 U.S. 302, 333-34 (1989) (ruling that trial court did not err in finding mentally disabled person competent to stand trial); *Clark v. Mitchell*, 425 F.3d 270, 283-84 (6th Cir. 2005) (fact that defendant suffers from borderline retardation or below average intelligence is not dispositive of whether waiver of rights was knowing and intelligent); *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) (stating that "neither low intelligence [nor] mental deficiency . . . can be equated with mental incompetence").

In this case, the parties and the trial court discussed the terms of the plea agreement and its consequences in detail at the plea hearing. Petitioner indicated that he understood those matters and that it was his desire to plead no contest. He should be bound by those statements. As aptly stated by the United States Court of Appeals for the Sixth Circuit when faced with a challenge to a plea bargain based upon an alleged off-the-record agreement:

> If we were to rely on [the petitioner's] alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy . . . indicating the opposite. This we will not do, for the plea colloquy process exists in part to prevent petitioners . . . from making the precise claim that is today before us. "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry."

*Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). Having reviewed the record, the Court is satisfied that Petitioner's plea was knowing, intelligent, and voluntary. Habeas relief is not warranted on this claim.

### B.    Competency Hearing Claim

Petitioner relatedly asserts (in his reply brief) that he is entitled to habeas relief because the trial court failed to *sua sponte* conduct a competency hearing. It is well-established that a criminal defendant may not be tried unless he or she is competent. *Godinez v. Moran*, 509 U.S. 389, 396

14

(1993).  The standard for competence to plead guilty or no contest and to be sentenced is the same as the standard for competence to stand trial:  whether the defendant has (1) sufficient present ability to consult with a lawyer and (2) a rational and factual understanding of the proceedings against him or her.  *Id*. at 396-98.  Due process is violated by a trial court's failure to hold a proper competency hearing where there is substantial evidence of a defendant's incompetency.  *Pate v. Robinson*, 383 U.S. 375, 385-86 (1966).  The question for a reviewing court in such a case is whether a reasonable judge, situated as was the trial court judge, should have experienced a "bona fide doubt" about the defendant's competency.  *See Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004) (citing *Drope v. Missouri*, 420 U.S. 162, 173 (1975)); *see also Cowans v. Bagley*, 639 F.3d 241, 247 (6th Cir. 2011).  Silence by a defendant and defense counsel on the issue of competency at the time of a plea is significant evidence that there is no bona fide doubt about the defendant's competency.  *United States v. Gignac*, 301 F. App'x 471, 475 (6th Cir. 2008).

Having reviewed the record, this Court concludes that a reasonable judge sitting the trial court's place would not have experienced a bona fide doubt as to Petitioner's competency at the time of his no contest plea.  While Petitioner may have a low IQ, a limited education, and difficulty reading and writing, such circumstances do not mean that he was incompetent to plead no contest and be sentenced.  *See Carpenter supra*, 26 F. App'x at 342-45; *Hastings v. Yukins,* 194 F. Supp. 2d 659, 671-72 (E.D. Mich. 2002) (stating that "neither low intelligence, mental deficiency, nor the fact that a defendant has been treated with anti-psychotic drugs can automatically be equated with incompetence" and citing *Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir. 2000), and *Miles v. Dorsey*, 61 F.3d 1459, 1474 (10th Cir. 1995)).  At the time of the plea, there was no indication that Petitioner was unable to sufficiently consult with defense counsel or have a proper understanding of the criminal proceedings and the plea agreement.  To the contrary, the record indicates that

15

Petitioner was 54 years old with a 10th grade education at the time of his plea, that he had been married several times and employed in factory and detailing jobs, that he entered into the plea agreement after consulting with counsel, and that he responded appropriately to the court's questions at the plea hearing.  Petitioner acknowledged that he understood the terms and consequences of his plea and confirmed that his plea was voluntary.  Neither the prosecutor nor defense counsel expressed concerns about Petitioner's competency at the time of his plea.

Moreover, the reports discussing Petitioner's low mental ability, upon which he now relies, were not before the trial court at the time of his plea or sentencing proceedings.  Rather, they were prepared post-sentencing and first presented to the state courts on appeal.  Given such circumstances, Petitioner fails to establish that the trial court violated his constitutional rights by failing to *sua sponte* inquire into his competency at the time of his plea and sentence.  Habeas relief is not warranted on this claim.

## V.    Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his pleadings.  Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented

16

2:14-cv-14600-GER-DRG   Doc # 9   Filed 07/26/16   Pg 17 of 17   Pg ID 450

are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the merit of the claims. *Id.* at 336-37. Having conducted the requisite review, the Court concludes that Petitioner fails to make a substantial showing of the denial of a constitutional right as to his claims. The Court, therefore, **DENIES** a certificate of appealability.

Lastly, the Court concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal as an appeal cannot be taken in good faith. *See* FED. R. APP. P. 24(a). Accordingly, the Court **DENIES** leave to proceed *in forma pauperis* on appeal.

**IT IS SO ORDERED**.


s/Gerald E. Rosen_____
United States District Judge

Dated: July 26, 2016


CERTIFICATE OF SERVICE


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 26, 2016, by electronic and/or ordinary mail.

s/Julie Owens_____
Case Manager, (313) 234-5135

17